## CLAY CITY NAT. BANK v. HALSEY.

### (Circuit Court of Appeals, Sixth Circuit. October 8, 1895.)

### No. 296.

ACCOMMODATION PAPER—BURDEN OF PROOF.

The K. Co., which had obtained from the C. Bank discounts of sundry notes of its own and of individuals given to it, with the bank's knowledge, for its accommodation, deposited with the bank sundry securities, as collateral to its indebtedness, and instructed the bank that such securities were pledged to secure the payment of loans made to the K. Co. or the various persons who had made the notes, and of any deficit on the present or future indebtedness. *Held*, that the burden was upon the bank to show that a note made by one of such persons to the order of the bank, and discounted after the deposit of the collateral, was made for the accommodation of the K. Co.; and that, upon the evidence in the case, the bank had failed to show such fact.

Appeal from the Circuit Court of the United States for the District of Kentucky.

This is a bill in equity, filed by E. T. Halsey, as receiver of the Kentucky Union Land Company, against the Clay City National Bank. The bill alleged that the Kentucky Union Land Company had deposited certain promissory notes and bonds with the Clay City National Bank as collateral security for the payment of the land company's indebtedness to the bank; that collections made by the bank of a part of said collaterals, together with payments made directly to the bank by the land company, had, if properly applied, paid off and discharged all proper indebtedness to the bank; and that it was, therefore, entitled to have the remaining collaterals returned, and its obligations to the bank canceled. This relief was resisted by the bank upon the ground that all of the obligations secured by pledge of the collaterals had not been paid. The decree was in favor of the complainants, and the bank has appealed.

St. John Boyle, for appellant.

Arthur Carey, for appellee.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

After stating the facts as above, the opinion of the court was delivered by LURTON, Circuit Judge.

The issue presented by the pleadings and assignment of error is wholly one of fact. The evidence establishes that many of the officers engaged in and about the transactions which gave rise to the controversy were officers of both corporations. The capital of the bank was small, and under the law it was prohibited from lending a sum in excess of 10 per cent. of its capital to any one customer. To avoid this provision, the land company procured the discount of notes made by one or more of its officers for accommodation, the proceeds of which were placed to its credit. Among those

who made such accommodation paper were F. D. Carley, its president, E. E. Carley, J. B. Clayton, and Arthur Carey, directors, and L. T. Rosengarten, its treasurer and secretary. On the 19th of July, 1890, Mr. Rosengarten, as secretary and treasurer, addressed to the bank a communication in the following words:

"Louisville, Ky., July 19th, 1890.

"Mr. Chas. Scott, Pres. Clay City National Bank, Clay City, Ky.—Dear Sir: Referring to your remark wherein you expressed a doubt as to the sufficiency of the collateral furnished by the Kentucky Union Land Company and Railway Company on account of the loans made these companies, I send you by express to-day one hundred Kentucky Union Railway Company second mortgage bonds, par value $1,000.00 each, Nos. 128 to 227, both inclusive, which you can hold as collateral on the loans made us. These bonds are good beyond all question, and have been largely taken hereabouts by local parties. I would be much obliged if you would return me the Three Forks City bonds sent you some time since as collateral.

"Yours, truly,                          L. T. Rosengarten, Sect'y and Treas.

"Please understand the above collateral is for any loan to our account."

Mr. Scott, the bank president, to whom this was addressed, was also the assistant secretary and treasurer of the land company. After receiving this additional collateral for the bank, he, in his character as assistant secretary and treasurer for the land company, addressed a communication to Mr. Grant Green, cashier of the bank, worded as follows:

"Clay City, Ky., July 29th, 1890.

"Mr. Grant Green, Jr., Cashier, City—Dear Sir: Will you kindly return to me the twenty-four (24) Three Forks City bonds, held by you as collateral on certain loans to Kentucky Union Land Company and Kentucky Union Railway Company. I desire to replace these bonds by one hundred (100) Kentucky Union Railway Company second mortgage bonds, Nos. 128 to 227, both inclusive, of one thousand dollars ($1,000.00) each. These securities are pledged to the Clay City National Bank, Clay City, Ky., to secure the payment of loans made to Kentucky Union Land Company, Kentucky Union Railway Company, F. D. Carley, L. T. Rosengarten, Earle E. Carley, J. B. Clayton, Arthur Carey, and Clay City Brick Company. It is understood that these bonds are also to secure the payment of any deficit on the present or future indebtedness to Clay City National Bank.

"Yours, truly,                          Kentucky Union Land Co.,

"Per Chas Scott, Ass't Treas."

At a still later date further collateral was deposited with the bank. The communication by which this pledge was made was dated November 8, 1890, and was as follows:

"Kentucky Union Land Co. F. D. Carley, President.

"Louisville, Ky., November 8th, 1890.

"Clay City National Bank, Clay City, Ky.—Dear Sirs: In answer to your request for additional security on various notes executed by Kentucky Union Land Company, Kentucky Union Railway Company, and other notes discounted by you for the said land company or companies or individuals in which it is interested, at the request of said land company we now herewith inclose you an assignment on the claim of the Kentucky Union Land Company against Asher Bros., to be held by you as collateral security for the payment of the said notes or of any future indebtedness created by or at the request of the said Kentucky Land Company.

"Yours, truly,                          F. D. Carley, President."

At the date of these several pledges the bank, among other obligations of the land company, held an accommodation note made by

F. D. Carley for $5,000, and another made by E. E. Carley for a like amount; both of which, with the knowledge of the bank, were notes made for accommodation of the land company, which had procured their discount, and caused the proceeds to be passed to its credit. After the date of the several letters above set out relating to deposit of collateral, the bank discounted, on November 22, 1890, a second note made by F. D. Carley, bearing date November 19, 1890, and payable to the order of the bank, for $5,140. The only disputed question in the case is as to the right of the bank to apply the collaterals theretofore pledged to the payment of this Carley note; the parties by a stipulation found in the record, having agreed that the collections made by the bank, together with payments made to it by the land company, would, if applied to the undisputed obligations of the land company, fully pay off and discharge all obligations other than this Carley note.

Nothing contained in the communications accompanying the collaterals indicates any purpose upon the part of the land company to secure any obligations other than its own, or those made for its accommodation. Prima facie, this disputed note is not an obligation of the land company. It was made and discounted after the deposit of the collaterals in question, and after the date of every written communication defining the purpose of the pledge. It therefore devolves upon the bank to show that it was discounted for its benefit, or to show a state of facts estopping the land company to dispute its liability. This, we think, it has not satisfactorily done. Mr. Rosengarten distinctly testifies that he procured the discount of the note for the personal accommodation of Mr. Carley, and that the bank gave a check on Cincinnati, payable to the order of Mr. Carley, for the proceeds. November 29th this check was returned, and a check or draft on New York was issued instead. Carley's note was accompanied by a large block of stock in the Big Stone Gap Improvement Company, which was then supposed to be ample security. The testimony of Mr. Scott, president of the bank, is in conflict with Mr. Rosengarten's statement; and certain entries made December 1, 1890, on the books of the land company and of the bank, tend to indicate this Carley note to have been discounted by procurement of the land company. These entries were all subsequent to the discount of this note, and were all made by direction of Mr. Scott, who was both president of the bank and assistant secretary and treasurer of the land company. The entries made on the land company's books seem to have been without authority from Mr. Rosengarten or any other authorized officer of the land company, and were canceled by Mr. Rosengarten's order so soon as discovered. Mr. Scott's evidence is contradictory, and by no means clear. The evidence of Mr. Green, the cashier of the bank, is based on what Mr. Scott told him, and upon inferences from book entries and former transactions, and therefore of no evidential value. Mr. Carley could have cleared the matter up, but his evidence was not taken. The appellant has not, by satisfactory evidence, established the liability of the land company for this Carley note. The decree will be affirmed.